UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────X
OLADAYO A. OLADOKUN,

               Plaintiff,                **MEMORANDUM & ORDER**

   -against-                            23-cv-5899 (NRM) (LB)

UNITED STATES OF AMERICA, *et al.*,

               Defendants.
───────────────────────────────X

NINA R. MORRISON, United States District Judge:

Plaintiff Oladayo A. Oladokun was incarcerated at the Metropolitan Detention Center ("MDC") when, according to the allegations in his amended complaint, he was repeatedly struck with a hard object by another inmate, requiring hospitalization and causing permanent damage. He alleges that MDC Officer Jashaun Jerrick witnessed the entire attack but did not attempt to stop it. Plaintiff brings this suit under the Federal Tort Claims Act ("FTCA") against the United States, alleging that the United States is liable for injuries he sustained as a result of negligence by Officer Jerrick. The government moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the government's motion is denied.

## BACKGROUND

### I. Plaintiff's Allegations

The allegations in the amended complaint are presumed to be true for purposes of this motion. *Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 145 (2d Cir. 2020).

1

On October 12, 2022, Plaintiff was in the custody of the MDC as a pretrial detainee, and was classified as a low security risk. Amended Compl., ECF No. 32 ¶ 13. On October 12, 2022, Plaintiff was attacked by another inmate, Nicholas Muhlenhardt,[1] with a weapon consisting of a combination lock or other solid object placed inside a sock. *Id.* ¶ 14. Muhlenhardt was a known sentenced violent gang member and a high security risk. *Id.* ¶ 15. The attack occurred in front of Officer Jerrick, who made no effort to intervene or stop Muhenhardt from walking up to Plaintiff and repeatedly striking him. *Id* ¶ 17. The attack was instead "stopped by the intervention of other inmates." *Id.* ¶ 18. Plaintiff sustained severe injuries to the head, face, jaw, mouth and body. *Id.* ¶ 16.

Plaintiff did not receive immediate medical care despite having sustained serious injuries. *Id.* ¶ 19. He was eventually transported to Brooklyn Hospital, having sustained a brain hemorrhage and fractured jaw. *Id.* ¶ 20. On October 19, 2022, oral surgeons at Brooklyn Hospital performed a surgery using wire to stabilize his fractured jaw. *Id.* ¶ 21. Three days later, on October 22, 2022, Dr. Bruce Bailor, a doctor employed by MDC, "required" the Brooklyn Hospital doctors to remove the wiring from Plaintiff's unhealed jaw so that Plaintiff may "regain admission" to MDC. *Id.* ¶¶ 5, 22.

## II. Procedural History and Remaining Claims

Plaintiff originally filed his complaint *pro se* on July 31, 2023. ECF No. 1. He attached a letter dated June 16, 2023 from the Federal Bureau of Prisons ("BOP")

---

[1] The spelling of the inmate's name is not consistent in the pleadings; it is sometimes spelled "Muhenhardt."

2

denying his administrative claim, in which Plaintiff alleged that he "suffered injuries as a result of being assaulted by another inmate at MDC Brooklyn on October 12, 2022" and in which the BOP found there was "not sufficient evidence to substantiate the allegations of this claim" or that Plaintiff "experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons employee." *Id.* at 12.[2] The letter concluded that if Plaintiff was "dissatisfied with this decision, [he] may bring an action raising only [his] personal injury claim against the United States in an appropriate U.S. District Court." *Id.*

On July 15, 2024, Plaintiff, now represented by counsel, filed an amended complaint against United States of America, MDC, Officer J. Jerrick, and Dr. Bruce Bailor. Amended Compl., ECF No. 32. The Amended Complaint brought claims against Officer Jerrick and Dr. Bailor in their individual capacities along with the United States of America and the MDC under the Federal Tort Claims Act ("FTCA"), *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)*,* and 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Eighth Amendments. *Id.*

On July 30, 2024, Defendants submitted a letter motion for a pre-motion conference in anticipation of a motion to dismiss, or in the alternative, a motion for summary judgment. Letter re Pre-Motion Conf. ("Gov. Letter"), ECF No. 33. In response, Plaintiff agreed to discontinue his suit against all individual defendants. Letter re Discont. ("Pl. Letter"), ECF No. 36. Thus, the only remaining defendant is

---

[2] All page references use ECF pagination except where noted.

the United States, and the only remaining claims are Plaintiff's claims under the FTCA. *See* Pl.'s Letter, ECF No. 36, at 1 ("[P]laintiff will discontinue his action against all the individual defendants in the caption and only proceed against the USA under the Federal Torts Claims Act . . . .").

On February 19, 2025, the government filed the instant motion seeking to dismiss this case under the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and argues that the Court lacks subject matter jurisdiction over Plaintiff's claims related to Officer Jerrick's failure to intervene and that Plaintiff has failed to state a claim of negligence. Gov.'s Mot. to Dismiss ("Gov.'s Mot."), ECF No. 44-2.[3]

## **STANDARD OF REVIEW**

Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable

---

[3] The government also argues that the Court lacks subject matter jurisdiction over Plaintiff's claims regarding negligent hiring, retention, training, or supervision; prison security; or failure to rehouse Plaintiff. Gov.'s Mot., ECF No. 44-2. In response, Plaintiff clarified that he is not asserting claims "for failure to rehouse, negligent hiring of and training for [Correctional Officer J. Jerrick], and medical malpractice. . . ." Pl.'s Opp. to Mot. to Dismiss ("Pl.'s Opp."), ECF No. 44-3, at 3 n.1. As the government pointed out in its reply, Plaintiff did not respond to its arguments related to prison security, and he has therefore abandoned those claims. Gov.'s Reply, ECF No. 44–4, at 1. *See BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 821 (S.D.N.Y. Mar. 31, 2021) ("Plaintiffs' failure to oppose [d]efendants' specific argument in a motion to dismiss is deemed waiver of that issue." (internal quotation marks omitted)); *Levy v. Maggiore*, 48 F. Supp. 3d 428, 452 (E.D.N.Y. 2014) ("Plaintiff does not respond to this argument and the Court therefore construes Plaintiff's failure to respond as an abandonment of this claim.").

inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova,* 201 F.3d at 113).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## **DISCUSSION**

Before reaching the question of whether Plaintiff has stated a claim upon which relief can be granted, the Court must first address whether it has subject matter jurisdiction.

### I. The FTCA's Discretionary Function Exception

Defendant argues that there is no subject matter jurisdiction in this case because the discretionary function exception of the FTCA bars Plaintiff's remaining claims against the United States.  Gov.'s Mot. at 8–18.

As sovereign, the United States "is immune from suit save as it consents to be sued. . . , and the terms of its consent to be sued in any court define that court's

5

jurisdiction to entertain the suit." *Russo v. United States*, No. 20-CIV-4999 (ER), 2021 WL 5403658, at *2 (S.D.N.Y. Nov. 18, 2021) (quoting *U.S. v. Mitchell*, 445 U.S. 535, 538 (1980)).  The FTCA, in turn, expressly "allows those injured by federal employees to sue the United States for damages." *Martin v. United States*, No. 24-362, 2025 WL 1657418, at *4 (U.S. June 12, 2025).  It does so by "waiving, in 28 U.S.C. §1346(b), the federal government's sovereign immunity for certain torts committed by federal employees acting within the scope of their employment." *Id.* (internal quotation omitted).  More specifically, the FTCA "waives the sovereign immunity of the United States for personal injury suits 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'"  *Hartman v. Holder*, No. 00-CV-6107 (ENV) (JMA), 2009 WL 792185, at *6 (E.D.N.Y. Mar. 23, 2009) (quoting 28 U.S.C. § 1346(b)(1)).

This general waiver, however, "is limited by 13 exceptions to liability, codified in 28 U.S.C. § 2680 . . . ."  *Id.*  One such exception is known as the "discretionary function exception," or "DFE," which provides that "the United States remains immune from suit where a claim is based on 'the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'"  *Id.* (quoting 29 U.S.C. § 2680(a)).

The Supreme Court's decisions in *Berkovitz ex rel. Berkovitz v. United States,* 486 U.S. 531 (1988) and *United States v. Gaubert,* 499 U.S. 315 (1991), "establish the

6

framework for evaluating whether particular governmental conduct falls under the DFE." *Coulthurst v. United States*, 214 F.3d 106, 108–09 (2d Cir. 2000). As such, "[t]he framework for evaluating whether the DFE bars a claim is known as the two-step *Berkovitz-Gaubert* test." *Maghen v. United States*, No. 19-CV-6464 (ILG) (CLP), 2021 WL 4172060, at *2 (E.D.N.Y. Sept. 14, 2021). Under the *Berkovitz-Gaubert* test, the DFE applies only if two conditions are met: "(1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst*, 214 F.3d at 109 (citing *Gaubert*, 499 U.S. at 322–23 and *Berkovitz*, 486 U.S. at 536–37).

### A. Whether Officer Jerrick's Acts Were Discretionary

To begin, Plaintiff seems to concede that the first part of the *Berkovitz-Gaubert* test is met. *See* Pl.'s Opp. at 16 ("[Plaintiff] does not dispute that the first prong of the discretionary function exception would likely be satisfied."). The Court agrees.

The federal statute that prescribes the BOP's duties states, in relevant part, that the BOP must "provide for the safekeeping, care and subsistence . . . [and] provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2)–(3). As many courts have already observed, the statute "does not compel an officer to act in a particular way when supervising inmates or when confronted with inmate-on-inmate violence. . . ." *Chen v. United States*, No. 09-CV-2306 (ARR), 2011 WL 2039433, at *7

7

(E.D.N.Y. May 24, 2011), *aff'd*, 494 F. App'x 108 (2d Cir. 2012) (internal quotation marks omitted). *See also Russo v. United States*, No. 22-1869-CV, 2024 WL 726884, at *1 (2d Cir. Feb. 22, 2024) (summary order) (noting that under Section 4042(a)(2) "deciding how to address prison safety issues such as . . . inmate-on-inmate threats involves an element of judgment or choice"); *Hartman*, 2009 WL 792185, at *7 (noting that Section 4042(a) did not compel defendant "to act in a particular way when supervising inmates or when confronted with inmate-on-inmate violence" (internal quotation marks omitted)).

### B. "Negligent Guard" Theory

Under the second prong of the discretionary function exception, the Court must determine whether Officer Jerrick's actions were grounded in public policy. This aspect of the DFE analysis "focuses on whether the specific action in question involves 'choices motivated by considerations of economy, efficiency, and safety.'" *Hartman*, 2005 WL 2002455, at *10 (quoting *Coulthurst*, 214 F.3d at 109–10).

Most relevant to the claims in this lawsuit, "[t]he Second Circuit has recognized a carve-out to the DFE known as the '"negligent guard" theory." *Searles v. United States*, No. 21-CV-6570 (RA), 2022 WL 2829912, at *5 (S.D.N.Y. July 20, 2022). The crux of the parties' dispute is whether the "negligent guard" theory applies here.

The "negligent guard" theory originates from two Second Circuit cases: *Coulthurst v. United States*, 214 F.3d 106, and *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006). In *Coulthurst*, the plaintiff, an inmate at a federal

8

prison, injured himself while using weightlifting workout equipment at the prison's gym. 214 F.3d at 107. The Second Circuit held that "if the [prison gym equipment] inspector failed to perform a diligent inspection out of laziness or was carelessly inattentive, the DFE does not shield the United States from liability." *Id.* at 110. In *Triestman*, the plaintiff was an inmate at a federal facility where employees were mandated not to "leave 'unattended,' any inmate in a locked housing unit who d[id] not have access to an emergency 'signaling device.'" 470 F.3d at 472. The plaintiff was assaulted by another inmate in their shared cell and did not receive immediate help from prison officers even after yelling for help. *Id.* at 473. The plaintiff, who was proceeding *pro se*, alleged that the prison did not follow the continuous staff mandate, and the Second Circuit held that negligent guard theory could potentially be applicable and remanded the case back to the district court. *Id.* at 476–77.

Thus, under the "negligent guard" theory, if "a government agent who is imbued with discretion behaves in a manner that is lazy or careless, his conduct cannot be said to be grounded in considerations of public policy and the discretionary function exception will not shield him from suit." *Hartman v. Holder*, 2009 WL 792185, at *7 (citing *Coulthurst*, 214 F.3d at 109–11). *See also Russo v. United States*, No. 22-1869-CV, 2024 WL 726884, at *2 (2d Cir. Feb. 22, 2024) (summary order) ("[A]ctions reflecting 'laziness' and 'inattentive[ness]' by federal employees 'do not involve considerations of public policy' and for that reason fall 'outside the scope' of the discretionary function exception." (alteration in original) (quoting *Coulthurst*, 214 F.3d at 110–11)). And "[a]t the pleading stage, the Court need not determine the

9

merits of the 'negligent guard theory' in this case or even its capacity to withstand summary judgment, to allow a claim to proceed." *Jensen v. United States*, No. 22-CV-01116 (OEM) (PK), 2025 WL 722904, at *13 (E.D.N.Y. Mar. 6, 2025). *See also Triestman*, 470 F.3d at 476 ("While expressing no ultimate view of the merits of the negligent guard theory in this case, or even of its capacity to withstand summary judgment, we believe the claim is not so meritless that it can now be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.").

Here, Plaintiff alleges that Muhlenhardt struck him "multiple times with [a] weapon consisting of a combination lock and or other solid object placed inside of a sock" in front of Officer Jerrick, who "witnessed the attack but made no attempt to intervene or to stop" him. Amended Compl. ¶¶ 14, 17. In addition, he alleges that the attack was eventually "stopped by the intervention of other inmates," not Officer Jerrick, and only after Plaintiff had received serious injuries that required treatment at an outside hospital. *Id.* ¶¶ 16, 18, 20. Plaintiff also alleges that Officer Jerrick should have known that there was a heightened risk of Plaintiff being harmed because Muhlenhardt was a known sentenced violent gang member and a high security risk. *Id.* ¶¶ 15, 32, 35.

Here, there are at least two questions that will likely need to be resolved before the Court (or a jury) can determine whether Jerrick "behave[d] in a manner that [was] lazy or careless," *Hartman*, 2009 WL 792185, at *7, so that the the negligent guard theory would apply: (1) the length of time Plaintiff was attacked in front of Officer Jerrick before other inmates intervened, and (2) to what extent Officer Jerrick

10

was aware that Muhlenhardt posed a particular risk to Plaintiff's safety. Those questions, however, are better suited for discovery and the Court will not dismiss the case at this juncture. *See Morrison v. United States*, No. 17-CV-6779 (WHP), 2019 WL 5295119, at \*6–7 (S.D.N.Y. Oct. 18, 2019) (denying defendant's motion to dismiss where plaintiff alleged, *inter alia,* that defendant officer "fail[ed] to provide immediate assistance to [plaintiff] due to . . . negligent conduct" because "this type of negligence is not protected by the discretionary function exception"); *Farley v. United States*, No. 11-CV-198S, 2014 WL 198331, at \*6 (W.D.N.Y. Jan. 15, 2014) (finding that "after full discovery, this Court, or a trier of fact, will be better equipped to determine whether there was a failure to carry out any discretionary function under the negligent-guard theory" and noting that "the negligent-guard analysis essentially requires this Court to determine whether there is sufficient evidence to suggest that Defendant was negligent generally"); *Hartman v. Holder*, 2005 WL 2002455, at \*10 (finding that question regarding applicability of negligent guard theory is better suited for summary judgment where plaintiff alleged negligent response to inmate fight).

Accordingly, the government's motion to dismiss under Rule 12(b)(1), arguing that the Court has no subject matter jurisdiction because Plaintiff has not plausibly pled that Officer Jerrick was negligent when he failed to intervene or otherwise keep Plaintiff safe from harm at the hands of Muhlenhardt, is denied. The Court will now turn to the government's argument under Rule 12(b)(6) that Plaintiff has failed to state a claim upon which relief can be granted.

11

## II. Negligence

Under the FTCA, the Court must "apply the substantive law of the place where the event occurred," which here is New York. *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994) (citing 28 U.S.C. § 1346(b)). To state a claim for negligence under New York law, "a plaintiff must show that there was (1) a duty owed to the plaintiff by the defendant, (2) breach of that duty by the defendant, and (3) injury sustained by the plaintiff substantially as a result of the breach." *Morrison*, 2019 WL 5295119, at *7 (citing *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)). In addition, under New York law, "a correctional facility 'owes a duty of care to safeguard inmates, even from attacks by fellow inmates.'" *Id.* (quoting *Sanchez v. State*, 784 N.E.2d 675, 678 (N.Y. 2002)). However, the scope of this duty "is 'limited to risks of harm that are reasonably foreseeable.'" *Id.* (quoting *Sanchez*, 784 N.E.2d at 678).

The government's principal argument is that Plaintiff has not pled enough facts to allow a trier of fact to infer that the inmate's attack was reasonably foreseeable. Gov.'s Mot. at 20–21; Gov.'s Reply at 8. The Court disagrees. Under New York law, "'the precise manner in which the harm occurred need not be foreseeable' — rather, it must be 'within the class of reasonably foreseeable hazards that the duty exists to prevent.'" *Morrison*, 2019 WL 5295119, at *7 (quoting *Sanchez*, 784 N.E.2d at 678) (internal quotation marks omitted). And at this stage, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

12

allegations," *Twombly*, 550 U.S. at 555. Rather, all that is required "are 'enough facts to state a claim to relief that is plausible on its face.'" *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).

Here, Plaintiff alleges that Officer Jerrick should have known that there was a heightened and substantial risk of Plaintiff being harmed because Muhlenhardt was a known sentenced violent gang member and a high security risk. Amended Compl. ¶¶ 15, 32, 35. At this stage, it is enough for the Court to construe the facts in the amended complaint in light of its own "judicial experience and common sense." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679). Thus, considering all the well-pleaded allegations in the amended complaint, the duty of care that Jerrick owed to Plaintiff as a pretrial detainee in his custody, and the Court's obligation to construe those facts in the light most favorable to Plaintiff at this stage, the Court finds that Plaintiff has adequately pled facts sufficient for the Court to infer that the brutal attack upon Plaintiff described in the amended complaint was "within the class of reasonably foreseeable hazards" encompassed within that duty. *Sanchez*, 784 N.E.2d at 678.

## CONCLUSION

Accordingly, the government's motion to dismiss is denied.

SO ORDERED.

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: June 26, 2025
     Brooklyn, New York

13